**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MICAH L. BUNCE, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 26-cv-01134-DDC-ADM |
| | ) |
| JAMES FELDMAN, EVAN LONDO, and ANDREW | ) |
| ZEIGLER, of the Salina Police Department, | ) |
| RICHARD JAMES, former Deputy County Attorney | ) |
| of Saline County, in their individual capacities; | ) |
| CITY OF SALINA, KANSAS; and the BOARD OF | ) |
| COUNTY COMMISSIONERS OF SALINE COUNTY, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DEFENDANT JAMES' MOTION TO DISMISS COMPLAINT AND
MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

This case has a detailed factual history, but the involvement of Richard James, the former

Deputy County Attorney of Saline County ("Defendant James") is limited. Defendant James was

told by members of the Salina Police Department that an investigator with the local public

defenders' office ("Plaintiff") gave false testimony at a hearing and may have committed perjury.

Defendant James provided the officers with a transcript of the hearing, communicated with officers

regarding the possibility of pursuing criminal perjury charges and the impact those charges could

have on Plaintiff's employment, and after conferring with his supervisor, asked one of the officers

to complete a probable cause affidavit per his supervisor's instructions. Before the probable cause

affidavit was executed and charges were filed against Plaintiff, Defendant James retired. This

limited involvement led to Plaintiff including Defendant James as a party in this lawsuit and

bringing seven federal and state law claims against him.

1

Even assuming all of the facts in Plaintiff's complaint (ECF No. 1, the "Complaint") are true, Plaintiff's claims against Defendant James fail as a matter of law. Defendant James is entitled to absolute prosecutorial immunity, or alternatively qualified immunity, on the federal claims against him, and the state law claims are barred due to absolute immunity and because his alleged actions fall into exceptions to the Kansas Tort Claims Act ("KTCA"). For these reasons, Defendant James moves to dismiss the claims against him in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and submits this memorandum in support.

## **Factual and Procedural Background**

A majority of the factual allegations in the Complaint are directed at other Defendants. Below are the limited factual allegations[1] that appear to be directed towards Defendant James:

- "Through Kansas Open Records Act disclosures, emails were uncovered in which SPD Captain James Feldman, Deputy County Attorney Richard James, and SPD Sgt. Andrew Zeigler circulated messages about Bunce under the subject line 'Bunce the Clown.' These emails discussed strategies to prosecute Bunce and expressed an intent to cause professional harm, including efforts and a desire to get Bunce terminated from his position with BIDS/Public Defender." Complaint ¶ 13.

- After officers from the Salina Police Department exchanged emails with each other investigating the potential perjury and multiple officers completed reports outlining "a misleading narrative purporting a perjury charge against" Plaintiff (Complaint ¶¶ 14, 15), the officers then "further engaged in conversations with [Defendant

---

[1]Although the Court must take the factual allegations as true for purposes of this Motion, Defendant James disputes Plaintiff's characterization of the facts and states that some are wholly inaccurate.

James] to engineer and pursue a charge of perjury against [Plaintiff] – an outcome that foreseeably placed [Plaintiff's] employment with BIDS in jeopardy, as evidenced by the following email sent by [Defendant James] to Captain Feldman and Sgt. Zeigler:

From: James Richard <jamesr@salinecountyks.gov>
Sent: Thursday, March 20, 2025 9:55 AM
To: Feldman, James <james.feldman@salina.org>
Cc: Zeigler, Andrew <andrew.zeigler@salina.org>
Subject: Bunce the Clown

Guys,

I outlined what happened with Bunce vis a vis the bath salts. The boss said tell you to send over an affidavit. He's getting conflicting advice, I told him we needed to file perjury charges, Quinn told him he prefers sending a copy to Justin Bravi and Heather Cessna (head of BIDS for Kansas and Bravi's boss), with a warning we're watching him. If we take Quinn's approach, I think it is probably 50/50 they'll fire him. If we take my approach and actually file on him, I think it's a 100% they fire him. I like my approach better, but the boss said he wants to have a meeting with all the lawyers before he makes a decision, but he wanted the affidavit from you to work from. I strongly made my case to Reynolds, but given tomorrow is my last day among you, not sure I have a lot of influence anymore.

RIck

Complaint ¶¶ 14–16.

- "At [Defendant James'] request, an affidavit of probable cause was executed by Captain Feldman." Complaint ¶ 17.

- "Deputy County Attorney Richard James participated in internal communications – including emails referring to Mr. Bunce as 'Bunce the Clown' – that revealed not only disdain for Bunce but an expressed desire to see him fired from his position with BIDS. Per Captain Feldman's report, James provided the SPD with a transcript of the Ashley Dempsey preliminary hearing. James then solicited a probable cause affidavit from the Salina Police Department with the goal of securing Mr. Bunce's termination." Complaint ¶ 28.

- "On April 4, 2025 – at Deputy County Attorney James's request – Captain Feldman executed the aforementioned sworn affidavit seeking to charge Mr. Bunce with felony perjury." Complaint ¶ 29.

- "Defendant James retired from the Saline County Attorney's Office on March 21 2025. The criminal complaint charging Plaintiff with perjury was not filed until April 17, 2025." Complaint ¶ 58.

- "James's conduct as a supervisor ignored the suggestion of subordinate attorneys, specifically Quinn Hughes - the prosecutor at the Dempsey hearing – to not charge Mr. Bunce." Complaint ¶ 61.

- "Prior to his employment with Saline County, Defendant James had previously been named in federal civil-rights litigation arising from allegations that he personally participated in affidavit-supported criminal charging conduct while functioning in an investigative or complaining-witness capacity." Complaint ¶ 62.

The Complaint contains a bevy of *legal* conclusions against Defendant James (*e.g.*, Complaint ¶¶ 57, 59–60; portions of Complaint ¶¶ 61–62), but the legal conclusions cannot be taken as true for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2006)).

## **Arguments and Authorities**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Brown v. Medtronic*, 628 F.3d 451, 459 (8th Cir. 2010) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). This "plausibility standard" requires more than "a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

I.    **Plaintiff's federal claims against Defendant James should be dismissed because Defendant James is entitled to absolute prosecutorial immunity and even if he weren't, dismissal would be proper based on qualified immunity.**

Plaintiff brings three federal claims against Defendant James, all pursuant to Section 1983: Fourth Amendment – Malicious Prosecution/Unlawful Seizure (Count One); First Amendment – Retaliatory Prosecution (Count Three); and Civil Rights Conspiracy (Count Six). Dismissal of all three of these Section 1983 claims is appropriate because Defendant James is entitled to absolute prosecutorial immunity and, in the alternative, qualified immunity.

A.    *The actions Plaintiff alleges Defendant James took were in his function as an advocate, thus he is entitled to absolute immunity.*

"Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983." *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007). "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).

Absolute immunity does not apply to all actions taken by prosecutors. Prosecutors are not entitled to absolute immunity, for example, when "acting as a witness rather than an advocate,"

*Nielander*, 582 F.3d at 1164, or "when a prosecutor conducts investigative work normally performed by the police." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1209 (10th Cir. 2022). When weighing whether the prosecutor's actions fall within the scope of absolute immunity, the Tenth Circuit encourages a "functional approach" analysis, first identifying the alleged wrongful acts and then classifying each "act according to its function," with the determinative factor being whether the prosecutor is functioning as an advocate. *Id.* at 1209.

As noted in *Chilcoat*, that advocacy is not limited to the courtroom: "[t]he Supreme Court has held that a prosecutor functions as an advocate when 'determin[ing] that the evidence [is] sufficiently strong to justify a probable-cause finding' and during their 'presentation of the information and the motion to the court.'" *Id.* at 1211 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997)); *see Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) ("Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution."). The Tenth Circuit has even held that absolute immunity applies "to a prosecutor's decision to file charges if the prosecutor had no probable cause to do so." *Warnick v. Cooley*, 895 F.3d 746, 752 (10th Cir. 2018). Allegations of an improper motive or malice do not affect the analysis, "for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." *Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223, 1229 (D. Kan. 1999) (quoting *Ireland*, 113 F.3d at 1447).

Here, the Complaint includes improper legal arguments stating that Defendant James is not entitled to absolute immunity, but these obviously need not be taken as true. The actual factual allegations against Defendant James boil down to the following: (1) Defendant James was involved in discussions with law enforcement regarding strategy to prosecute Plaintiff, Complaint ¶¶ 13–16; (2) Defendant James provided a transcript of the hearing in question to the officers, Complaint

¶ 28; (3) after speaking to his supervisor, Defendant James asked one of the officers to complete a probable cause affidavit per the request of Defendant James' supervisor, Complaint ¶ 16; (4) another prosecutor suggested that they should not prosecute Plaintiff, Complaint ¶ 61; (5) Defendant James retired almost a month before Plaintiff was charged,  Complaint ¶ 58; and (6) Defendant James was previously a defendant in a civil rights lawsuit, Complaint ¶ 62.

It is clear that the limited actions Plaintiff alleges Defendant James took in this case all were done in his role as an advocate. Although the charges were not filed until after Defendant James retired, the acts of discussing prosecution strategy, providing a transcript of the relevant hearing, and passing along a message from his supervisor requesting a probable cause affidavit were taken pursuant to his prosecutorial duty of determining whether the evidence was sufficiently strong to initiate criminal proceedings against Plaintiff. *Chilcoat*, 41 F.4th at 1211. Thus, when undertaking these actions, Defendant James was acting in his function as an advocate and is entitled to absolute prosecutorial immunity, regardless of whether the ultimate probable cause determination was correct.

Because he is entitled to absolute immunity, all of Plaintiff's Section 1983 claims against Defendant James should be dismissed.

B. *Dismissal of the federal claims against Defendant James is also proper because Defendant James is entitled to qualified immunity, and Plaintiff's allegations are not sufficient to overcome that defense.*

Even if Defendant James were not entitled to absolute immunity, dismissal of Plaintiff's Section 1983 claims against Defendant James would be proper because Plaintiff's allegations against him are not sufficient to overcome Defendant James' qualified immunity defense. When a qualified immunity challenge is made at the motion to dismiss stage, there are two distinct questions: (1) whether the facts set forth a constitutional violation, and (2) whether the alleged

violation of constitutional law was clearly established at the time of the conduct. *Pierce v. Gilchrist*, 359 F.2d 1279, 1284 (10th Cir. 2004). If the answer to either question is no, the result is dismissal in favor of the defendant. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). Whether plaintiff has alleged a violation of his clearly established constitutional rights to overcome the qualified immunity defense is an issue of law. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

For the constitutional law in question to be clearly established, "[t]he precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct." *Spiehs v. Lewis*, No. 23-cv-04121, 2024 U.S. Dist. LEXIS 226266, at *35–36 (D. Kan. Dec. 13, 2024) (citing *Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015)). This means that "[w]hen it is debatable whether a violation has occurred in the circumstances at issue, the law cannot, by definition, be clearly established." *Id.* at *36 (citing *Reichle v. Howards*, 566 U.S. 658, 669–70 (2012)).

In a case like this, where Plaintiff makes Section 1983 claims against multiple defendants, "an ***individual*** assessment of each defendant's conduct and culpability," is necessary to weigh liability under Section 1983 and each defendant's entitlement to qualified immunity. *Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013) (emphasis added). In other words, for each Section 1983 claim, Plaintiff need not just establish whether the facts set forth a constitutional violation that was clearly established at the time, but that the facts set forth that ***Defendant James*** committed a constitutional violation that was clearly established at the time. *Id.*

1. <u>The facts alleged by Plaintiff don't set forth a constitutional violation against Defendant James on any of the three counts brought against him.</u>

None of the three federal claims brought against Defendant James by Plaintiff can survive a qualified immunity analysis because the facts alleged do not set forth a constitutional violation.

8

Count One is a claim for "Fourth Amendment – Malicious Prosecution/Unlawful Seizure." To prevail on this claim against Defendant James, Plaintiff needs "to show (among other things) that [Defendant James] brought criminal charges against him without probable cause." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 560 (2024). Plaintiff cannot show that Defendant James brought any charges against him, with or without probable cause, because Plaintiff concedes that by the time he was charged, Defendant James was retired. Complaint ¶ 58. Therefore, dismissal of Count One as to Defendant James is proper.

Count Three is a claim for First Amendment Retaliatory Prosecution. To prevail on this claim against Defendant James, Plaintiff must show that Defendant James had retaliatory animus, took an adverse action against Plaintiff in the form of a prosecution, and that there was an absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 259–61 (2006). Here, none of the facts alleged as to Defendant James constituted an adverse action against Plaintiff. Did Plaintiff have a clearly established right for Defendant James not to send an accurate transcript of a hearing at which Plaintiff testified, Complaint ¶ 28, or for Defendant James not to discuss potential charges and pass along a message from his supervisor requesting a probable cause affidavit? Complaint ¶¶ 15-17. Of course not. Because there are no facts that show Defendant James took adverse action against Plaintiff or violated any clearly established constitutional right of Plaintiff, dismissal of Count Three is appropriate as Defendant James is entitled to qualified immunity.

Further, the presence of probable cause precludes liability for a First Amendment Retaliation Claim, and a plaintiff must plead and prove the lack of probable cause as an element of his case. *Id.* at 265-66; *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020). In cases of malicious prosecution, where the lack of probable cause is also an essential element, "the inquiry as to want of probable cause is limited to the facts and circumstances as they

9

appeared to defendant at the time the prosecution was commenced." *Nelson v. Miller*, 227 Kan. 271, 277, 607 P.2d 438 (1980). Notwithstanding that Defendant James had already left the Saline County Attorney's Office when charges were brought against Plaintiff, Plaintiff has failed to allege that at the time of Defendant James' conduct, he lacked probable cause to believe that Plaintiff committed perjury. In fact, during the preliminary hearing in Plaintiff's criminal case on July 10, 2025, nearly four months after Defendant James retired from the County Attorney's office, the court found there was sufficient probable cause to bind Plaintiff over for trial. (Complaint ¶¶ 38, 58, 82).

The final federal claim against Defendant James is Count Six, a claim for Civil Rights Conspiracy. "To prove a conspiracy under § 1983, a plaintiff must show 'at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'" *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010)). The "agreement must be illegal," meaning "proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—would be inadequate to support a § 1983 conspiracy claim." *Id.* at 1025. Here, at least as it relates to Defendant James, there are no allegations that he did anything more than take part in lawful prosecutorial activities. Plaintiff does not and could not truthfully allege that Defendant James had any information that would lead him to question the veracity of the accusation that Plaintiff's testimony was false. The individual assessment required by *Pahls v. Thomas*, 718 F.3d at 1233, shows that there are no facts to support the finding of a constitutional violation by Defendant James in regard to Count Six. Therefore, dismissal of Count Six as to Defendant James is appropriate.

2.  <u>Even if Plaintiff could establish one or more constitutional violations by Defendant James, the claims still fail because there has been no violation of clearly established constitutional rights by Defendant James.</u>

Even if Plaintiff could successfully establish that the facts alleged against Defendant James set forth one or more constitutional violations, he would still need to establish that the violations were of clearly established constitutional rights. "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case at issue* exists." *Works v. Byers*, 128 F.4th 1156, 1165-66 (10th Cir. 2025) (quoting *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024)). The "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The allegations against Defendant James are nowhere near this standard. Did Defendant James have a clearly established obligation not to send the transcript, or to not speak with officers about potential charges against Plaintiff? Of course not. Did Defendant James have a clearly established obligation not to pass along his supervisor's request for a probable cause affidavit? Absolutely not. Did Plaintiff have a clearly established right for Defendant James not to weigh the collateral consequences of a conviction on his employment? Certainly not. There are simply no factual allegations that suggest that any action taken by Defendant James constitutes a violation of any clearly established right as to any of the three federal claims. Therefore, dismissal of all three Section 1983 claims against Defendant James is appropriate.

## II.   Dismissal with prejudice of Plaintiff's state law claims against Defendant James is appropriate

Plaintiff also brings four state law claims against Defendant James: malicious prosecution (Count Seven); abuse of process (Count Eight); intentional infliction of emotional distress (Count Nine); and civil conspiracy (Count Ten). Dismissal of these claims is warranted because (A)

11

Defendant James is entitled to absolute prosecutorial immunity recognized by Kansas appellate courts, and (B) multiple exceptions under the KTCA apply.

> A. *Defendant James is absolutely immune from the state law claims pursuant to the prosecutorial immunity recognized by Kansas appellate courts.*

Kansas appellate courts have long recognized an absolute prosecutorial immunity that exists not just as to federal claims brought under Section 1983, but as to state common law claims. *See, e.g.*, *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 476 (1980) ("A prosecutor has absolute immunity from common law suits for malicious prosecution."). In Kansas, the right to absolute prosecutorial immunity goes back more than a century. In *Smith v. Parman*, 101 Kan. 115, Syl. ¶ 2 (1917), the Kansas Supreme Court affirmed the dismissal of civil claims against a city attorney, holding that "a public prosecutor can not [sic] be held liable in a civil action on account of having instituted or maintained a prosecution in that capacity for an alleged violation of the criminal law."

In *McCormick v. Board of County Commissioners*, 272 Kan. 627, Syl. ¶ 2 (2001) the Kansas Supreme Court adopted a similar standard for analyzing absolute prosecutorial immunity as the Tenth Circuit, that "[p]rosecutors have absolute immunity for activities intimately associated with the judicial phase of the criminal process, that is, for performing the traditional functions of an advocate." The *McCormick* case involved both Section 1983 and state law tort claims, but its holding has been applied by the Kansas Court of Appeals in at least one case involving solely state law claims. *See, e.g.*, *Moral v. Telegram Publ. Co.*, No. 107,527, 2013 Kan. App. Unpub. LEXIS 681, at *12–13 (D. Kan. Aug 2, 2013) (applying *McCormick* and holding that a prosecutor enjoyed absolute prosecutorial immunity from civil claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress arising out of her actions initiating a criminal complaint) (unpub.).

As discussed at length *supra*, although Defendant James was retired by the time Plaintiff was actually charged, all of the allegations against Defendant James relate to his performance of traditional functions of an advocate—communication with law enforcement about potential charges (Complaint ¶¶ 13–16) and passing along his supervisor's request for a probable cause affidavit (Complaint ¶¶ 16–17). These facts are clearly distinguishable from *McCormick*, where the Kansas Supreme Court found that the prosecutor did not enjoy the protections of absolute immunity when she prepared and personally swore to the affidavit in support of the criminal complaint because it transformed her from an advocate to a witness. *McCormick*, 272 Kan. at 635–36.

Because the allegations against Defendant James all relate to actions taken in his role as an advocate, he is entitled to absolute immunity as to all of the state law claims, and dismissal of those claims is appropriate.

> B. *Defendant James is immune from damages for the state law claims because he can establish that two exceptions to KTCA liability apply.*

Although the general rule under the KTCA is liability for government entities and employees sued in state court, a defendant is immune from the tort claim if the defendant can establish that one of the exceptions outlined in K.S.A. 75-6104 applies. *Thomas v. County Comm'rs*, 293 Kan. 208, 233 (2011). Here, there are at least two KTCA exceptions that apply to the allegations made against Defendant James: the discretionary function exception (K.S.A. 75-6104(a)(5)) and the immunity exception (K.S.A. 75-6104(a)(9)).

> 1. The actions Defendant James alleges Plaintiff took were all discretionary, thus K.S.A. 75-6104(a)(5) applies.

A governmental entity or an employee acting within the scope of his employment is immune from liability from "any claim based upon the exercise or performance or the failure to

13

exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(a)(5). When analyzing whether a function is discretionary, courts look "to the nature and quality of the discretion exercised to determine whether a function or duty is discretionary." *Montgomery v. Saleh*, 311 Kan. 649, 664 (2020) (citing *Soto v. City of Bonner Springs*, 291 Kan. 73, 79 (2010)). Because every action uses some level of judgment or discretion, "[t]he more a judgment involves the making of policy[,] the more it is of a "nature and quality" to be recognized as inappropriate for judicial review." *Id.* (quoting *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 795 (2019)).

Courts must examine whether there is case law or a statute that the agency in question must follow when executing the function in question. *McCormick*, 272 Kan. at 644. "It is clear that if a duty is not mandatory or not clearly specified then it is discretionary." *Id.* (quoting *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 323–24 (1988)). *McCormick* ultimately held that the prosecutor was immune from liability on state tort claims under the discretionary function, as she acted within the scope of her employment and her discretionary duty when she executed the probable cause affidavit, although as discussed above, by personally signing the affidavit she lost absolute immunity for the Section 1983 claim. *Id.* at 646-47. Here, the factual allegations against Defendant James and the legal allegations rising from them were all discretionary functions. Communicating with law enforcement officers regarding their investigatory findings, requesting a probable cause affidavit at the behest of his supervisor, and determining whether criminal proceedings should be initiated are all discretionary functions of a prosecutor. There is no allegation of a clearly specified mandatory duty, therefore the discretionary function exception applies and dismissal in favor of Defendant James is appropriate.

2. Defendant James' absolute and qualified immunity triggers the KTCA exception in K.S.A. 75-6104(a)(9).

K.S.A. 75-6104(a)(9) prohibits "any claim that is limited or barred by any other law or is for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages." Some courts applying this exception have found that a finding of qualified immunity for Section 1983 purposes means the individual is immunized from state law claims pursuant to this provision, *Arceo v. City of Junction City*, 182 F. Supp. 2d 1062, 1094 (D. Kan. 2002), while others have held that a defendant must establish more than just qualified immunity under Section 1983 to trigger this exception. *Gilliam v. USD #244 Sch. Dist.*, 397 F. Supp. 2d 1282 (D. Kan. 2005). In this case, this distinction is irrelevant because Defendant James is not immune from suit solely because of qualified immunity from Section 1983. He is also immune because, as discussed at length *supra*, he has absolute prosecutorial immunity from Section 1983 claims and absolute prosecutorial immunity from Kansas common law claims. Thus, the immunity exception applies and Plaintiff's state law claims against Defendant James must be dismissed.

### Conclusion

Dismissal with prejudice of Plaintiff's claims against Defendant James is appropriate because Defendant James is entitled to absolute and qualified immunity on the federal Section 1983 claims, and absolute and KTCA immunity on the state law claims.

Respectfully submitted,

FOULSTON SIEFKIN LLP

*s/ Jeremy E. Koehler*
Jeremy E. Koehler, #28217
Michael J. Braun, #30700
1551 N. Waterfront Pkwy., Suite 100
Wichita, KS 67206-4466
T: 316.291.9728 | F: 316.267.6345
jkoehler@foulston.com
mbraun@foulston.com
*Attorneys for Defendant James*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2026, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF filing system, which will send notice of the electronic

filing to all counsel of record.

*s/ Jeremy E. Koehler*
Jeremy E. Koehler, #28217

16