**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICAH L. BUNCE,

        Plaintiff,

        v.

JAMES FELDMAN, EVAN LONDO, and
ANDREW ZEIGLER, of the Salina Police
Department, RICHARD JAMES, former Deputy
County Attorney of Saline County, in their individual
capacities; CITY OF SALINA, KANSAS; and the
BOARD OF COUNTY COMMISSIONERS OF
SALINE COUNTY,

        Defendants.

Case No. 6:26-cv-01134-DDC-ADM

**DEFENDANT BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

COMES NOW, Defendant Board of County Commissioners of Saline County (the "BOCC"), by and through Francis M. Schneider of Watkins Calcara, Chtd., moves to dismiss Plaintiff Micah L. Bunce's ("Plaintiff's" or "Bunce's") complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of its motion, BOCC submits the following.

**INTRODUCTION**

The Complaint tells the story of Defendants James Feldman, Evan Londo, and Andrew Zeigler, of the Salina Police Department, and former Deputy County Attorney Richard James, who are alleged to have acted in concert, and with animus, to cause the initiation of criminal proceedings against Plaintiff without probable cause as part of a larger plan to cause Plaintiff's termination from BIDS/ Public Defender's Office. The Complaint (Doc. 1) alleges the BOCC violated Plaintiff's constitutional rights under 42 USC § 1983, although there are no well-pleaded facts suggesting any involvement of the BOCC or any member of the BOCC in the plan.

Instead, the Complaint tries, but fails, to lump the BOCC into the alleged plan based solely on a theory of respondeat superior liability for actions taken by Defendant James in the scope of his employment with the county.  But as conceded by the Complaint's more well-pleaded allegations, Defendant James worked subservient to the County Attorney's office (who are actors of the State) and in the employ of the County Attorney's office. The BOCC simply exercised no direction or control over Defendant James in the performance of his investigatory and prosecutorial functions.

Setting conclusory, implausible allegations aside, a claim for *Monell* liability against the BOCC premised on actions of the assistant county attorney, who is an actor or advocate of the state.  Based on this reason, among others, the Complaint fails to state a federal claim for *Monell* liability against the BOCC.  The Court should also dismiss the state law claims asserted against the BOCC by Plaintiff if Defendant James is qualified immune.  Alternatively, because the Complaint fails to state a federal claim, the Court should decline supplemental jurisdiction over Plaintiff's state law claims.  The BOCC respectfully requests the Court dismiss all claims asserted against it in the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

The following are the only facts from the Complaint's Statement of Facts which appear to be directed at the BOCC:[1]

- Testimony of Mr. Bunce, which was immaterial to the outcome of Ms. Dempsey's preliminary hearing and finding of probable cause for possession of methamphetamine, became the pretext for *Defendants'* retaliatory and malicious prosecution of Mr. Bunce. (Complaint, ¶12).  There is no allegation, however, identifying the BOCC or any member of the BOCC having been involved in or having assisted with the prosecution.  Nor is there any allegation of any member of the BOCC having had knowledge of the prosecution.

---

[1] The overwhelming majority of the factual allegations are directed at other Defendants.

- Despite the Defendants' "investigation" and baseless charges crumbling at Mr. Bunce's preliminary hearing, Micah Bunce was bound over for trial. (Complaint, ¶38). There is no allegation in the Complaint that points to the BOCC or any member of the BOCC having been involved in or having assisted with the investigation.  Nor is there any allegation of any member of the BOCC having had knowledge of the investigation.

- Defendant James was at all times material hereto a Deputy Attorney within the Saline County, Kansas Attorney's Office, and thus, a subordinate of County Attorney Reynolds and an agent, deputy, servant, and employee of the Saline County Attorney's Office, and thus an employee of Saline County, Kansas. (Complaint, ¶50).

- Prior to his employment with Saline County, Defendant James had previously been named in federal civil-rights litigation arising from allegations that he personally participated in affidavit-supported criminal charging conduct while functioning in an investigative or complaining-witness capacity. (Complaint, ¶62).

- The Complaint alleges upon information and belief, that Defendant James' prior involvement in federal civil rights litigation concerning affidavit-supported criminal charging practices was discoverable by defendant County through publicly available court records prior to the events described herein. (Complaint, ¶62).

No allegation identifies a member of the BOCC, or any involvement by any member of the BOCC in the allegations pleaded therein.

The Complaint alleges against the BOCC a federal claim for Monell-Municipal Liability under § 1983 (with deliberate indifference), and state law claims for Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress.

## **LEGAL STANDARD**

Under Rule 12(b)(6), the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must contain sufficient factual matter to state a claim which is plausible on its face.

3

*Twombly*, 550 U.S. at 555. In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. Further, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Lee v. Reed*, 221 F. Supp. 3d 1263, 1273 (D. Kan. 2016). It is not enough to make recitals of a cause of action accompanied by conclusory statements. *See Twombly*, 550 U.S. at 556.

<u>**ARGUMENT AND AUTHORITY**</u>

I.      **As Conceded by the Complaint, Defendant James is an Employee of the County Attorney's Office and is Subservient to the County Attorney.**

The claims asserted against the BOCC in the Complaint are premised on a theory of respondeat liability based on actions allegedly taken by Defendant James in the scope of his employment with the County.  (Doc. 1, ¶¶ 50, 62).  "[C]ounty district attorneys work for the state, not the county." *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (citing K.S.A. § 22a-101(a)); *see also Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1254 (D. Kan. 2004). Likewise, in no event are district attorneys to be deemed an officer of any county. *McCormick v. Bd. of County Comm'rs*, 28 Kan. App. 2d 744, 752-753 (2001) (citing K.S.A. 22a-101(a)); *see also* K.S.A. § 22a-108.

In *McCormick v. Bd. of County Comm'rs*, the Kansas Court of Appeals concluded that the Board of Commissioners could not be liable under § 1983 for acts taken by the district attorney, noting that district attorneys are officers of the State.[2] 28 Kan. at 752-753 (finding that, for this reason, alone, that the petition was fatally deficient).  District attorneys and their agents are considered State employees for purposes of the Kansas Tort Claims Act. *McCormick*, 28 Kan.

---

[2] The Kansas Court of Appeals separately recognized that plaintiff had failed to state a claim for municipality because he had failed to allege any such official policy or custom promulgated by the county commissioners. *McCormick,* 28 Kan. at 752-753.  This was also a basis for dismissal. *Id.*

App. 2d at 752-753 ("Consequently, the Commissioners could not be held liable for the actions of an employee of the district attorney's office.") (citing Att'y Gen. Op. No. 87-13); *see also Grimes v. Douglas Cnty. Mun.*, 2022 U.S. Dist. LEXIS 251130, *6 (D. Kan. 2022) (dismissing a § 1983 claim alleged against the county based in part on alleged unconstitutional conduct of deputy district attorneys because a district attorney is an executive officer of the state (citing *Carbajal v. Lucio*, 832 F. App'x 557, 564 (10th Cir. 2020) (unpublished)).

Circuit Courts have also concluded that *Monell* liability against a county cannot be premised on actions of a district attorney when the district attorney is an actor or advocate of the state. *See, e.g. Doe v. Harris Cty.*, 751 Fed. Appx. 545, 550 (5th Cir. 2018) ("Whether an individual is acting on behalf of the state or the county is determined by state law.");[3] *see also D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014) (A "state prosecutors' actions in prosecuting state crimes cannot themselves establish municipal policy.").

The Complaint recognizes that Defendant James worked as deputy county attorney for the Saline County Attorney's Office, who was the supervising official of Defendant James. (Doc. 1, ¶¶ 49, 50; *see also* Doc. 1, ¶¶ 1, 15, 28-29, 40, and 42). Indeed, the Complaint concedes that "Defendant James was at all times material hereto a Deputy Attorney within the Saline County, Kansas Attorney's Office, and thus, a subordinate of County Attorney Reynolds and an agent, deputy, servant, and employee of the Saline County Attorney's Office". (Doc. 1, ¶ 50). Thus, the Complaint's allegation that Defendant James is an employee of Saline County is conclusory and contradicted by more well-pleaded allegations revealing that Defendant James is "subordinate of County Attorney Reynolds and an agent, deputy, servant, **and employee of the Saline County**

---

[3] Again, a county attorney is an actor of the state under Kansas law. K.S.A. 22a-101(a)); *see also* K.S.A. § 22a-108; *McCormick*, 28 Kan. App. 2d at 752-753; *Wanjiku*, 173 F. Supp. 3d at 1236; *Schroeder*, 311 F. Supp.2d at 1254; Att'y Gen. Op. No. 87-13.

**Attorney's Office**." (Doc. 1, ¶ 50) (emphasis added).  The Complaint's allegation that Defendant James acted in the scope of his employment with the county (or the BOCC) is entirely conclusory and should not be accepted as true.  (Doc. 1, ¶ 50).

Consistent with Kansas law, and as conceded by the Complaint, Defendant James was an actor of the state, and his actions cannot be imputed to the BOCC.  This is fatal to the claims asserted by Plaintiff against the BOCC.  The Complaint fails to state a claim for *Monell* liability under § 1983 against the BOCC.  The Complaint also fails to state a claim under the Kansas Tort Claims Act against the BOCC.  Given the independence of the County Attorney's office as expressly provided for under Kansas law, dismissal of the BOCC is appropriate.

## II.     The Complaint Fails to State a Claim for *Monell* liability Under § 1983 Against the BOCC.

Plaintiff has named both Defendant Richard James in his official capacity and the BOCC as defendants.  Plaintiff has alleged a *Monell* - Municipal Liability (42 U.S.C. § 1983) claim against the BOCC based on acts taken by Richard James in the scope of his employment with Saline County.  However, as detailed above in Section I, because Defendant James is an actor of the State (and not the county), there can be no *Monell* liability against the BOCC.

Even if the Court accepts as true the Complaint's conclusory allegation that Defendant James is an employee of the County, a municipality "may not be held liable where there was no underlying constitutional violation." *See, e.g. Donahue v. Wihongi*, 948 F.3d 1177, 1199 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). As is more fully detailed herein, *see infra* Section II.A., and in Defendant James' motion to dismiss, Doc. 24, Plaintiff has failed to state an underlying constitutional violation. Thus, the Complaint's *Monell* liability claim must be dismissed as to the BOCC.

Provided that the Complaint has pleaded an underlying constitutional violation by Defendant James (and it has not), *Monell* claims are not meant to create superior liability for every constitutional violation that may involve a municipal employee. *See, e.g. Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) ("[A] municipality cannot be held liable under § 1983 on respondeat superior theory."). Since *Monell,* the Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*," but nonetheless has imposed liability upon municipalities when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights. *See, e.g. Bd. of Cty. Comm'rs of Bryan Cty., Ok. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*).

A government generally cannot be sued under § 1983 for injuries caused by its employees; rather, a municipality can only be sued if a plaintiff alleges (1) a violation of his constitutional rights; (2) an official municipal policy or custom; (3) direct causation between the policy or custom and the constitutional violation; and (4) the requisite state of mind—that policy enacted or maintained with deliberate indifference to the risk of that constitutional violation occurring. *Teetz v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, 2023 U.S. Dist. LEXIS 204550, at *9 (Nov. 14, 2023); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769-71 (10th Cir. 2013).

**A.  The Complaint fails to allege a constitutional violation.**

The three federal claims asserted by Plaintiff against Defendant James form the basis for the alleged constitutional violations asserted against the BOCC.  But none of the three federal claims brought against Defendant James constitute a constitutional violation.  Count One is a claim for "Fourth Amendment – Malicious Prosecution/Unlawful Seizure."  (Doc. 1, ¶ 22).  To prevail on this claim against Defendant James, Plaintiff must "show (among other things) that [Defendant James] brought criminal charges against him without probable cause . . . . *Chiaverini v. City of*

7

*Napoleon*, 602 U.S. 556, 560 (2024). Plaintiff concedes that by time he was charged, Defendant James had retired. (Doc. 1, ¶ 58). Regardless of whether any charges were brought against him, with or without probable cause, the charges were *not* brought by Defendant James. Thus, basic principles of linear time undermine causation Plaintiff's Fourth Amendment claim.  Plaintiff has not (because he cannot) plead violation of a constitutional right under Count One against Defendant James.

Count Three of the Complaint alleges First Amendment Retaliatory Prosecution against Defendant James. To prevail on this claim, Plaintiff must show that Defendant James had retaliatory animus, took an adverse action against Plaintiff in the form of a prosecution, and that there was an absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 259–61 (2006).  None of the facts alleged as to Defendant James constituted an adverse action against Plaintiff.  In any event, the presence of probable cause precludes liability for a First Amendment Retaliation Claim. *See, e.g. id.* at 265-66; *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020).

In cases of malicious prosecution, where the lack of probable cause is also an essential element, "the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced." *Nelson v. Miller*, 227 Kan. 271, 277, 607 P.2d 438, 444 (1980). In addition to the fact that Defendant James had already left the Saline County Attorney's Office when charges were brought against Plaintiff, Doc. 1, ¶ 58, the Complaint has failed to allege that at the time of Defendant James' conduct, he lacked probable cause to believe that Plaintiff committed perjury. To the contrary—during the preliminary hearing in Plaintiff's criminal case on July 10, 2025, nearly four months after Defendant James retired

from the County Attorney's office, the court found there was sufficient probable cause to bind Plaintiff over for trial. (*See* Doc. 1, ¶¶ 38, 58, 82).

The Complaint asserts a claim for Civil Rights Conspiracy against Defendant James under Count Six. "To prove a conspiracy under § 1983, a plaintiff must show 'at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'" *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010)). The "agreement must be illegal," meaning "proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—would be inadequate to support a § 1983 conspiracy claim." *Id.* at 1025. At most, the allegations allege that Defendant James engaged in lawful prosecutorial activities. The Complaint does not (because it could not) truthfully allege that Defendant James had any information that would lead him to question the veracity of the accusation that Plaintiff's testimony was false. There are no facts to support the finding of a constitutional violation by Defendant James under Count Six.

Thus, the Complaint has not plead a violation of Plaintiff's constitutional rights. For this reason, alone, the Complaint's *Monell* claim fails against the BOCC. Further, should the Court determine that Defendant James is qualified immune, then the Court should dismiss the *Monell* claim against the BOCC. *See, e.g. Zesiger v. Kelly*, No. 25-2354-EFM-RES, 2026 U.S. Dist. LEXIS 55234, at *23 (D. Kan. Mar. 17, 2026) (finding that individual defendants were qualified immune and that Plaintiff failed to state a *Monell* claim against the municipality for lack of constitutional violation).

**B.  The Complaint fails to allege a policy, custom, or practice of the BOCC.**

An official policy of the BOCC is required under § 1983 to distinguish acts of the Board from acts of its employees. *See, e.g. Schneider*, 717 F.3d at 770 (internal citations omitted). A plaintiff can plead one of the following five forms of a municipal policy or custom: (1) A formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policy makers of the decisions, and the basis of them, of subordinates to whom authority was delegated subject to the policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Id.* at \*10 (citing *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)); *see also, e.g.*, *Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (finding assertion of a policy standing alone was "wholly conclusory" and would not survive a motion to dismiss).[4] The Complaint pursues the second, third and fourth forms: customs and practices, decisions of a policymaker, and ratification. (Doc. 1, ¶¶ 128, 132).

As this Court has observed:

Pleading a municipal policy, custom, or practice is like pleading the breach element of negligence—which is also ultimately a question of fact for the jury. **The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists.** With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one

---

[4] *See also Granato v. City & Cty. of Denver*, No. 11-cv-3047-MSK-BNB, 2011 U.S. Dist. LEXIS 97007, 2011 WL 3820730, at \*8 (D. Colo. Aug. 30, 2011) (dismissing the complaint because it failed to "identify precisely what particular custom or policy" of the municipality the individual defendant was acting pursuant to).

> another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a police officers' statements attesting to the policy's existence. **The Tenth Circuit has not explicitly held as much, but they have implied that district courts should analyze policies, practices, or customs under Monell as legal conclusions at the pleading stage—which must be supported by facts, rather than conclusorily alleged—and not facts in and of themselves, to be taken as true at face value . . .**
>
> To the extent Plaintiff alleges a formal policy, he makes no reference to where such policy is contained or codified. **To the extent Plaintiff alleges informal policies, practices, custom, or usage, such a policy or custom must be widespread, permanent, and well-settled such that it effectively carries the force of law.**

*Pino v. Weidl*, 2020 U.S. Dist. LEXIS 122325, at \*16-18 (D. Kan. July 13, 2020) (internal quotation marks and citations omitted) (emphasis added); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."). To the extent that the Complaint alleges a formal policy, there are no well-pleaded facts that reference such policy or identify where such policy is contained or codified.

To the extent the Complaint alleges an informal policy, practice, custom, or usage, it must be "widespread, permanent, and well-settled" such that it effectively carries the force of law. *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Complaint makes the conclusory assertion that unconstitutional customs and practices exist, but the Complaint contains no well-pleaded facts that support a widespread, permanent and well-settled informal custom or practice.

To the extent the Complaint alleges ratification, it relies on the bald assertion that the County ratified Defendant James' participation in, and support of Plaintiff's prosecution. (Doc. 1, ¶¶ 128, 132). The Court should not accept this legal conclusion as a well-pleaded fact. *Lee v. Reed*, 221 F. Supp. 3d 1263, 1273 (D. Kan. 2016). Further, for ratification to serve as the basis

of *Monell* liability, a final policymaker must ratify a subordinate's actions. *See Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020); *Brown v. City of Houston*, 2018 U.S. Dist. LEXIS 42543, *10 (5th Cir. 2018) (finding a county attorney is not a policymaker for the county). This means a final policymaker has "retained the authority to measure the [subordinate] official's conduct for conformance with *their* policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (emphasis in original). The Complaint fails to allege any policymaker with the BOCC who retained authority to measure Defendant James' conduct.

Finally, the Tenth Circuit has held, as a matter of law, that one prior incident cannot establish a pattern for purposes of proving municipal liability. *See, e.g. Swearingen v. Pleasanton Unified Sch. Dist. 344*, 2021 U.S. Dist. LEXIS 231499, *18 (2021) ("[W]e have expressly held that one prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.") (citing *Waller* at 1287). Thus, the Complaint's reference to one prior federal civil rights lawsuit (unrelated to this one), in which Defendant James was alleged to have personally participated in affidavit-supported criminal charging is insufficient. (Doc. 1, ¶¶ 62, 63).

Because there is no policy, custom, or practice of the BOCC sufficiently pled here, the Complaint does not meet the pleading standard for a *Monell* claim premised on the BOCC's policy or custom. The Complaint's vague and conclusory allegations also fail to support ratification.

**C. The Complaint fails to allege a direct causation between a policy, custom, or practice of the BOCC and any alleged constitutional violation.**

If the Complaint demonstrates a municipal policy, custom, or practice (and it has not), Plaintiff must next "demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller*, 932 F.3d at 1284 (internal quotations omitted). To impose § 1983 liability on the county and its officials for acts taken by its employee, a plaintiff must show that the employee

committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *See Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989) ( "A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.").

The Complaint alleges that the direct and proximate result of the conduct of the BOCC, and its employees and agents resulted in Plaintiff's damage, but that conclusion is not accompanied by any well-pleaded facts. (Doc. 1, ¶133).  Alternatively, the Complaint alleges that the BOCC acted with deliberate indifference to the obvious constitutional risks associated with permitting prosecutorial personnel to participate directly in investigative and charging functions without adequate supervision, safeguards, limitations, or institutional review, but that conclusion is also not accompanied by well-pleaded facts. (Doc. 1, ¶134).  Under either alternative, these allegations are entirely conclusory and need not be accepted as true.

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Comm'rs of Bryan County, v. Brown*, 520 U.S. 397, 405 (1997).  Thus, the Complaint has not alleged well-pleaded facts sufficient to meet this rigorous standard by showing a BOCC policy, custom, or practice is causally connected to any alleged constitutional violation.

In the absence of a facially unconstitutional municipal policy, plaintiff may satisfy the state of mind element by showing that municipal action was taken with deliberate indifference as to its known or obvious consequences. *See, e.g. Schneider*, 717 F.3d at 770.  Deliberate indifference is a stringent fault standard that requires proof the municipality disregarded a known or obvious

13

consequence of its action. *Brown*, 520 U.S. at 410. Nothing in the Complaint plausibly alleges the requisite state of mind: deliberate indifference. *Schneider,* 717 F.3d at 770. There are no well-pleaded facts that support the conclusion that any policy, custom, or practice of the BOCC was the moving force behind Plaintiff's alleged injury.

Desperate to attribute animus to the BOCC (where none exists), the Complaint concludes, implausibly, that the BOCC acted with deliberate indifference through, among other acts, continued participation in and support of the prosecution without correction, withdrawal or reevaluation of the factual basis supporting probable cause. (*See, e.g.* Doc. 1, ¶¶ 126-127, 131-132, 134, 139, 141). These conclusory allegations do not rise to the level of deliberate indifference by the BOCC or any member of the BOCC.

The Complaint fails, as a matter of law, to state a claim for *Monell* liability against the BOCC. Thus, the Court should dismiss Count Five asserted against the BOCC.

III. **THE COURT SHOULD DISMISS THE STATE LAW CLAIMS ASSERTED AGAINST THE BOCC.**

A. **If Defendant James is Qualified Immune, the Court Should Dismiss the State Claims Asserted Against the BOCC.**

The Complaint alleges that Defendant Richard James acted within the course and scope of his employment with Saline County, rendering the BOCC vicariously liable under the Kansas Tort Claims Act ("KTCA") under Counts Seven, Eight, and Nine.

In general, the KTCA makes "cities, counties, and the state" liable when their employees act negligently or wrongfully under the doctrine of respondeat superior and renders government employees liable for money damages when they commit unprivileged torts within the scope of employment." *Schreiner v. Hodge*, 315 Kan. 25, 504 P.3d 410, 422 (Kan. 2022). The general rule of liability is set forth in K.S.A. 75-6103(a), which provides: "[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees

while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a).

Defendant James has moved to dismiss the Complaint against him based on absolute and qualified immunity, among other defenses. (*See, e.g.* Doc. 24). Should the Court determine that Defendant James is qualified immune, the Court should also find as a matter of law that Defendant James did not engage in a negligent or wrongful act or omission while acting in the scope of his employment. *See* K.S.A. 75-6103(a) ("[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment."). Stated another way, if Defendant James is qualified immune, the Court must dismiss the state law claims against the BOCC for failure to state a claim.

### B. Alternatively, the Court Should Decline Supplemental Jurisdiction Over Plaintiff's State Law Claims.

"[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002). Because the Complaint fails to state a viable federal claim against the BOCC, this Court should decline supplemental jurisdiction over Plaintiff's state law claims against the BOCC. *See, e.g. Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020).

Based on either of the foregoing alternatives, the Court should dismiss Counts Seven, Eight, and Nine asserted against the BOCC.

### CONCLUSION

Based on the foregoing reasons, the Court should dismiss, in its entirety, the federal and state claims asserted against Defendant Board of County Commissioners of Saline County under Counts Five, Seven, Eight, and Nine in the Complaint.

Respectfully submitted by,

WATKINS CALCARA, CHTD.

/s/ Francis M. Schneider
Francis M. Schneider, KS # 27896
225 N Market St., Suite 300
Wichita, KS 67202
Telephone:  (316) 461-5802
Facsimile:   (620) 792-2775
fschneider@wcrf.com

*Attorney for Defendant Board of County*
*Commissioners of Saline County*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2026, I electronically filed the above and foregoing Memorandum in Support of Motion to Dismiss by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ Francis M. Schneider
Francis M. Schneider