**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MICAH L. BUNCE, | ) |
| | ) |
| *Plaintiff,* | ) |
| vs. | ) |
| | ) |
| JAMES FELDMAN, EVAN LONDO, and ANDREW | ) No. 6:26-cv-01134-DDC-ADM |
| ZEIGLER, of the Salina Police Department, | ) |
| RICHARD JAMES, former Deputy County Attorney | ) |
| of Saline County, in their individual capacities; | ) |
| CITY OF SALINA, KANSAS; and the BOARD OF | ) |
| COUNTY COMMISSIONERS OF SALINE COUNTY, | ) |
| *Defendants*. | ) |
| ________________________________________________ | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY'S MOTION TO DISMISS**

Plaintiff Micah Bunce, through undersigned counsel, respectfully submits this response in opposition to Defendant Board of County Commissioners of Saline County’s Motion to Dismiss and Memorandum in support thereof (Docs. 25 and 26).

## INTRODUCTION

Defendant Board of County Commissioners of Saline County (“BOCC”) asks this Court to dismiss every claim against it on the theory that Defendant Richard James was, categorically and for all purposes, an employee of the State of Kansas rather than of Saline County — and that the Complaint therefore fails, as a matter of law, to allege a claim for municipal liability. That theory rests entirely on a line of cases addressing Kansas's *district attorney* system, a system Saline County does not have. Saline County retains the traditional, elected county attorney's office under K.S.A. 19-701 *et seq.* — an office the Kansas Supreme Court has expressly held to be a county office, not a state one. *Wall v. Harrison*, 201 Kan. 598, 604–05, 443 P.2d 266, 271 (1968). The

federal decisions BOCC cites for a contrary rule either arise in Kansas's four district-attorney judicial districts, where a separate statute expressly declares the office holder "in no event… an officer of any county," K.S.A. 22a-101(a), or, where they do involve a traditional county attorney, hold only that the office is a state actor for the narrow, function-specific purpose of prosecutorial *advocacy* — not for the investigative and administrative conduct the Complaint attributes to Defendant James here.

Nor does the Complaint allege that the BOCC is liable simply because Defendant James was its employee. It alleges that Defendant James, while still employed by Saline County and before any charge existed or even probable cause to believe a charge could exist[1], participated in developing the investigative basis for a prosecution later shown to rest on demonstrably false premises — and that the County maintained no institutional safeguards to prevent a deputy county attorney with a discoverable history of similar conduct in another county from directing that kind of investigative activity unchecked. Those are institutional allegations of custom, practice, and deliberate indifference, expressly pleaded in the alternative as Rule 8 permits — not a bare assertion of respondeat superior.

For the reasons below, Plaintiff respectfully requests that the Court deny the BOCC's Motion to Dismiss in its entirety.

## LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded factual allegations as true and draw all reasonable

[1] See generally *Complaint* (Doc. 1) and specifically, ¶16, see also *Burns v. Reed,* 500 U.S. 478 (1991).

inferences in Plaintiff's favor. *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). While legal conclusions are not entitled to a presumption of truth, factual allegations — including allegations describing the nature, timing, and purpose of a defendant's conduct — must be credited even where they bear on a legal question the defendant would prefer resolved in its own favor at the pleading stage.

## ARGUMENT

### I. The Complaint's allegation that defendant James was an employee of Saline County is consistent with Kansas law and is not a "concession" fatal to Plaintiff's claims.

#### *A. Saline County has a county attorney, not a district attorney, and the statutory rule the BOCC relies on to declare the office holder a state officer does not apply here.*

The BOCC's threshold argument rests on a false premise: that Kansas law categorically treats every county or district prosecutor's office as an arm of the State, full stop. It does not. Kansas maintains two distinct offices. In four judicial districts — the third, tenth, eighteenth, and twenty-ninth — the legislature abolished the office of county attorney and created the office of *district attorney* in its place. K.S.A. 22a-101(a). A fifth district, the seventh, was added by K.S.A. 22a-108. In those five districts, and only those five, the governing statute expressly provides that the district attorney "constitut[es] a separate entity within said district for administrative purposes, and in no event shall said district attorney be deemed an officer of any county." K.S.A. 22a-101(a).

Saline County is part of the twenty-eighth judicial district. It is not, and has never been, one of the districts in which the office of county attorney was abolished and replaced with a district attorney under K.S.A. 22a-101 or 22a-108. Saline County accordingly retains the traditional, elected county attorney's office under K.S.A. 19-701 *et seq.*, including K.S.A. 19-704 (election of the county attorney) and K.S.A. 19-702 (duties of the county attorney). No statute comparable to K.S.A. 22a-101(a)'s "in no event… an officer of any county" language applies to Saline County's office.

That distinction is not academic; it is precisely the line drawn by the Kansas Attorney General in the only opinion addressing the question. Attorney General Opinion No. 87-13 concluded that "district attorneys and their agents are state employees" for purposes of the Kansas Tort Claims Act — but the opinion's reasoning is expressly and exclusively grounded in K.S.A. 22a-101 and 22a-108's declaration that a district attorney is, "in no event," an officer of any county, and in K.S.A. 22a-106's provision for the district attorney's appointment of assistants and deputies as the district attorney's own agents. Att'y Gen. Op. No. 87-13 (Jan. 22, 1987). The opinion says nothing about county attorneys operating outside the district-attorney districts, because no comparable statutory declaration exists for them.

Every decision the BOCC cites for the proposition that "[c]ounty district attorneys work for the state, not the county," BOCC Mem. (Doc. 26) at 4, arose in a district-attorney district governed by that statutory declaration. *McCormick v. Bd. of Cnty. Comm'rs*, 28 Kan. App. 2d 744 (2001), involved the Shawnee County District Attorney's office — Shawnee County sits in the third judicial district, one of the five districts K.S.A. 22a-101(a) expressly covers. *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217 (D. Kan. 2016), involved the Johnson County District Attorney's office — Johnson County sits in the tenth judicial district, likewise covered by K.S.A. 22a-101(a). Neither case says anything about a county, like Saline County, that never converted to the district-attorney system.

### *B. Wall v. Harrison holds that the office of county attorney — as distinct from district attorney — is a county office, not a state one.*

The Kansas Supreme Court has already considered, and rejected, the very argument the BOCC now advances. In *Wall v. Harrison*, the Sedgwick County Attorney argued that the duties he performed and the interests he served made him functionally "a district officer, a public prosecutor, of a judicial district," rather than a county officer. 201 Kan. at 600. The Kansas

Supreme Court disagreed, holding that "the office of county attorney is a county office." *Id.* at 604. The court explained that county attorneys "were originally created for the purpose of assisting the counties in carrying out their usual and necessary political functions," that they "are elected by the voters of their respective counties," "paid from funds levied and collected by their counties," have "territorial jurisdiction… limited generally to their counties," and "by common usage and custom… have been considered and referred to as county officers," citing what is now K.S.A. 19-705. *Id.* at 604–05.

Nothing about Saline County's county attorney's office differs in any relevant respect from the Sedgwick County office at issue in *Wall*. The BOCC's Motion does not cite *Wall v. Harrison* at all, let alone explain why its controlling holding on the institutional status of the office of county attorney should not govern here.

### ***C. Schroeder's holding that a Saline County prosecutor acted as a state official is properly limited to the prosecutorial advocacy function — the same functional line Plaintiff draws for Defendant James's own conduct.***

The BOCC also cites *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241 (D. Kan. 2004) — which happens itself to be a Saline County case, involving the Saline County Attorney and an assistant Saline County attorney. But *Schroeder* does not hold, categorically, that every act by a Saline County prosecutor is state action. It reached its conclusion by applying *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997), which asks "whether the government official is a final policy maker for the local government in *a particular area, on a particular issue*" — an expressly function-specific inquiry, not a blanket status determination. 311 F. Supp. 2d at 1254 n.43. Applying that test, *Schroeder* grounded its conclusion specifically in the county attorney's statutory "duty to prosecute… on behalf of the people," K.S.A. 19-702, and found that the conduct at issue — filing charges, corresponding with another prosecutor about the relative strength of

parallel cases, filing an appeal from a dismissal — fell "within the traditional advocacy function of a prosecutor." *Id.* at 1254–55.[2]

That is the same functional line — investigation versus prosecution — that governs absolute prosecutorial immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993), and that Plaintiff's opposition to Defendant James's own motion to dismiss applies to defeat his immunity defense. The Complaint does not allege that Defendant James filed charges, appeared in court, or made an independent prosecutorial decision; by the time any charge was filed, he had already retired. *See* Complaint (Doc. 1) ¶ 58. It alleges instead that, while still a Saline County employee, Defendant James communicated with SPD officers about investigative strategy, supplied the transcript of the underlying hearing, and solicited the probable cause affidavit that Captain Feldman would later execute. *Id.* ¶¶ 124–127. Under *Schroeder*'s own function-specific reasoning, conduct of that kind — investigative and administrative, occurring before any charge existed — is not the prosecutorial advocacy function that triggers state attribution. Reading *Schroeder* any other way would mean the same conduct is simultaneously too investigative to entitle Defendant James to absolute immunity and too prosecutorial to expose the County that employed him to any institutional responsibility — a result *Schroeder*'s own functional test does not require and *Wall v. Harrison*'s characterization of the office forecloses.

Accordingly, the Complaint's allegation that Defendant James was, at all relevant times, an employee of Saline County, *see* Complaint ¶ 50, is not a conclusory allegation contradicted by the Complaint's own more specific factual allegations. It is a legally accurate description of a county

[2] In *Schroeder*, unlike this case, neither official was alleged to have participated in generating the investigative record underlying the charge, communicated with law enforcement about how to build the case, or solicited a probable cause affidavit and directed what it should contain. *Schroeder*'s Eleventh Amendment analysis, moreover, was not necessary to its result: the court independently held that the complaint failed to allege any actionable conduct by either official regardless of their official status. 311 F. Supp. 2d at 1253–54. This case presents neither feature of *Schroeder* — a a case within the scope of prosecut , or a complaint that fails to allege actionable conduct in the first place.

attorney's office that Kansas law has never converted to a district attorney's office, consistent with both *Wall v. Harrison* and the function-specific limits of *Schroeder* itself.

**II. The Complaint states a claim for Monell liability against the BOCC.**

***A. An underlying constitutional violation is adequately alleged.***

The BOCC's argument that the Complaint fails to allege an underlying constitutional violation, (Doc. 26 at 6–10), borrows nearly entirely from Defendant James's own motion to dismiss (Doc. 24) and fails for the reasons set out in Plaintiff's opposition to that motion, incorporated herein by reference. As explained there, the Complaint plausibly alleges that Defendant James set in motion the chain of events that deprived Plaintiff of his constitutional rights, *see Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010), and that the underlying perjury charge lacked probable cause both because the factual premise of the affidavit was demonstrably false and because Plaintiff's testimony was immaterial to the Dempsey proceeding as a matter of law. *State v. Rollins*, 264 Kan. 466, 470, 957 P.2d 438 (1998). Multiple constitutional violations are adequately alleged in the Complaint.[3] Because a constitutional violation is adequately pleaded, the BOCC's Monell claim does not fail on that threshold ground.

***B. The Complaint is not premised on respondeat superior; it alleges institutional customs, practices, and deliberate indifference, pled in the alternative.***

The BOCC characterizes the Complaint as reasoning, in substance, that "James worked for the County; therefore the County is liable." That is not what the Complaint alleges, and the Complaint says so expressly: "Plaintiff does not seek to impose municipal liability upon the

[3] **Fourth Amendment** — unlawful seizure / malicious prosecution (Count One): being charged and prosecuted without probable cause

**Fourteenth Amendment** — fabrication of evidence / due process (Count Two): being deprived of liberty based on evidence the defendants knew or should have known was false

**First Amendment** — retaliatory prosecution (Count Three): being prosecuted *because* he gave truthful, protected testimony

**§ 1983 conspiracy** (Count Six): an agreement among defendants to bring about one of the above

County based solely on the discretionary act of filing charges, but upon the County's investigative and administrative participation in developing, soliciting, approving, and continuing reliance upon materially false or incomplete information used to cause Plaintiff's seizure and prosecution." *See* Complaint (Doc. 1), ¶ 129.

The BOCC's own brief correctly identifies the recognized avenues for municipal liability — an informal custom or practice, the decision of a final policymaker, ratification, and a failure to train or supervise resulting from deliberate indifference. *See* Doc. 26 at 10 (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)). The Complaint pleads several of these theories in the alternative, as Rule 8(d)(2)–(3) expressly permits, including customs and practices concerning the participation of prosecutorial personnel in investigative activity, ratification, deliberate indifference to known and obvious constitutional risks, and inadequate supervision and safeguards governing prosecutorial personnel performing investigative functions. *See* Complaint (Doc.1) ¶¶ 122–141. Whether Plaintiff can ultimately prove any one of these theories is a question for discovery and summary judgment; it is not a basis for dismissal by simply relabeling institutional allegations as respondeat superior in hopes of a favorable ruling.

***C. The Complaint plausibly alleges deliberate indifference through the BOCC's failure to screen and supervise prosecutorial personnel performing investigative functions before any charge existed.***

Two related, pre-charge institutional failures are well pleaded and independently sufficient at this stage.

***1. The BOCC's failure to screen a deputy county attorney with a discoverable history of similar conduct states a claim under the municipal-hiring standard of Bryan County v. Brown.***

The Complaint alleges that, prior to his employment with Saline County, Defendant James had previously been named in federal civil-rights litigation arising from allegations that he personally participated in affidavit-supported criminal charging conduct while functioning in an

investigative or complaining-witness capacity, and that this history was discoverable through publicly available court records before the events described in the Complaint. *See* Complaint (Doc. 1) ¶¶ 62–63, 136–137.

The governing standard for a claim of this kind is not the training-pattern doctrine of *City of Canton v. Harris*, 489 U.S. 378 (1989), but the distinct, single-incident hiring standard the Supreme Court articulated in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997). *Bryan County* holds that a single hiring decision can support municipal liability where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the consequence of the decision to hire would be the deprivation of or “moving force” behind the deprivation of a third party's federally protected right. *Id.* at 400, 411. That inquiry asks whether the *specific* injury that occurred was a plainly obvious consequence of the *specific* background the hiring authority failed to uncover — not whether county attorney's offices in general pose some generic risk of misconduct. *Id.* at 410–12.

That standard is met here in a way it was not in *Bryan County* itself, where the plaintiff relied on a background of traffic offenses and a resisting-arrest charge from the defendant’s college days to support liability for a later act of excessive force — conduct the Court held was not a plainly obvious predictor of the injury that followed. *Id.* at 412–13. Here, by contrast, the prior litigation the Complaint alleges was discoverable did not involve some unrelated category of misconduct; it involved the same kind of conduct at issue in this case — personal participation in affidavit-supported criminal charging while functioning in an investigative or complaining-witness capacity. *See* Complaint (Doc. 1) ¶ 62.[4] A prior, publicly filed civil-rights suit alleging

[4] The federal civil rights litigation referenced is *Pamela Curtis v. Board of County Commissioners of Clay County, Kansas*, *Richard James Clay County Attorney*, case no. 5:12-cv-04028-JTM-KMH, removed to federal court and filed March 9, 2012. Clay Center is the county seat of Clay County, approximately 60 miles from Salina, Saline County, Kansas.

that James, again under the auspices of a prosecutor, personally drove the fabrication of a charging affidavit is about as close a match to the injury that later occurred as the single-incident hiring doctrine requires, at least at the pleading stage, where Plaintiff need only allege facts making the claim plausible, not prove them. *Iqbal*, 556 U.S. at 678.

#### ***2. The Complaint separately alleges that the BOCC maintained no institutional safeguards over prosecutorial personnel performing investigative functions, tied directly to Defendant James's own pre-charge conduct.***

Independent of the screening theory, the Complaint alleges that Defendant James — while still a Saline County employee, and before any charge existed — communicated with SPD officers about investigative strategy, transmitted the Dempsey hearing transcript for use against Plaintiff, participated in discussions about the effect a perjury charge would have on Plaintiff's employment, and solicited the probable cause affidavit that Captain Feldman ultimately executed. *See* Complaint (Doc. 1) ¶¶ 124–127. The Complaint further alleges that the BOCC maintained no adequate supervision, safeguards, limitations, or institutional review governing the participation of prosecutorial personnel in investigative and charging functions of this kind, and that the need for such safeguards was obvious given that such personnel are entrusted with authority that can lead directly to an individual's arrest and prosecution. *Id.* ¶¶ 134–135.

This theory does not ask the Court to treat Defendant James's *prosecutorial* decision-making as a County policy — that would run headlong into *Schroeder*'s treatment of advocacy functions as state action, discussed above in Part I.C. It asks the Court to recognize that the very conduct Plaintiff relies on to defeat Defendant James's claim to absolute immunity — investigative coordination with law enforcement, undertaken before any charging decision and while he remained a County employee — is the same conduct the Complaint alleges the County left institutionally unsupervised. The two arguments are not in tension; they rest on the identical functional characterization of what Defendant James actually did.

***D. Direct causation is adequately alleged at the pleading stage.***

The Complaint alleges that the BOCC's institutional failures — in screening and in supervising prosecutorial personnel performing investigative functions — were moving forces behind the constitutional violations Plaintiff suffered. See Complaint (Doc. 1) ¶¶ 130–132, 139–141. *Bryan County*'s admonition that "rigorous standards of culpability and causation must be applied," 520 U.S. at 405, describes the showing Plaintiff must ultimately *prove*; it is not a pleading requirement. At the motion to dismiss stage, Plaintiff need only plausibly allege the causal connection, which the Complaint does by tying the BOCC's specific, alleged institutional failures directly to the specific investigative conduct that produced Plaintiff's prosecution.

**III. The State law claims against the BOCC should not be dismissed.**

***A. The BOCC's state-law argument is expressly contingent on Defendant James being qualified immune, and Defendant James is not qualified immune for the reasons set out in Plaintiff's opposition to his motion to dismiss.***

The BOCC's only argument for dismissal of Counts Seven, Eight, and Nine is conditional: "[s]hould the Court determine that Defendant James is qualified immune, the Court must dismiss the state law claims against the BOCC." Doc. 26 at 14–15. As set out at length in Plaintiff's opposition to Defendant James's motion to dismiss, incorporated here by reference, Defendant James is not entitled to qualified immunity: the Complaint plausibly alleges a constitutional violation that was clearly established at the time of his conduct, and alleges the requisite causal connection under *Mink v. Knox*, 613 F.3d at 1001, even though Defendant James did not personally execute the affidavit. Because the premise of the BOCC's conditional argument fails, its state-law argument fails with it.

***B. The Court should retain supplemental jurisdiction over the state law claims regardless of the outcome of the Monell claim against the BOCC specifically.***

The BOCC alternatively argues that, if the Complaint fails to state a federal claim *against the BOCC*, the Court should decline supplemental jurisdiction over the state law claims asserted against it. Doc. 26 at 15. That argument misreads 28 U.S.C. § 1367. Supplemental jurisdiction is assessed for the *case*, not defendant by defendant: a district court may decline supplemental jurisdiction under § 1367(c)(3) only where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (emphasis added). Even the authority the BOCC cites confirms as much: a court should "normally dismiss supplemental state law claims after *all federal claims have been dismissed*," *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (emphasis added) — a condition that has not been met and will not be met here regardless of the Monell claim's fate as to the BOCC specifically, because federal claims remain pending against Defendants Feldman, Zeigler, Londo, and James arising from the same case or controversy. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). The state law claims against the BOCC arise from that same common nucleus of operative fact and should remain in this action along with the state law claims against the other Defendants regardless of how the Monell claim against the BOCC is ultimately resolved.

## CONCLUSION

The Complaint's allegation that Defendant James was a Saline County employee is consistent with Kansas law distinguishing county attorneys from district attorneys, with *Wall v. Harrison*'s holding that the office of county attorney is a county office, and with the function-specific limits of *Schroeder* itself. The Complaint does not rest on respondeat superior; it alleges, in the alternative, that the BOCC failed to screen a deputy county attorney with a discoverable history of substantially similar misconduct (that also resulted in federal litigation) and failed to

supervise prosecutorial personnel performing investigative functions before any charge existed — the same investigative conduct at issue in Plaintiff's opposition to Defendant James's own motion to dismiss. The state law claims fail only if Defendant James is qualified immune, which he is not, and supplemental jurisdiction over those claims does not depend on the outcome of the Monell claim against the BOCC specifically. For the foregoing reasons, Plaintiff respectfully requests that the Court deny the BOCC's Motion to Dismiss in its entirety.

Respectfully submitted,

HUTTON & HUTTON

*/s/ Matthew M. Dwyer, #22492*
Matthew M. Dwyer, #22492
Blake A. Shuart, #24463
8100 E. 22nd St. N., Bldg. 1200
Wichita, KS 67226
Phone: (316) 688-1166 / Fax: (316) 686-1077
E-Mail: Matthew.Dwyer@huttonlaw.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 17th day of August 2026, the above and foregoing was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will send electronic notice of filing to:

Daniel C. Sloan, #29193
Andrew D. Holder, #25456
FISHER, PATTERSON, SAYLER & SMITH, LLP
9393 W. 110th Street, Suite 300
Overland Park, KS 66606
P: (913)339-6757
F: (913)660-7919
Email: dsloan@fpsslaw.com
Email : aholder@fpsslaw.com
*Attorneys for Defendants City of Salina, James Feldman, Andrew Zeigler and Evan Londo*

Francis M. Schneider, #27896
WATKINS CALCARA, CHTD.
1321 Main Street, Ste 300
P.O. Drawer 1110
Great Bend, KS 67530
P: (620) 792-8231
F: (620)792-2775
Email: fschneider@wcrf.com
*Attorneys for Defendant Board of County Commissioners of Saline County*

Jeremy E. Koehler, #28217
Michael J. Braun, #30700
FOULSTON SIEFKIN, LLP
1551 N. Waterfront Pkwy., Ste. 100
Wichita, KS 67206-4466
P: (316)291-9728
F: 316)267-6345
Email: jkoehler@foulston.com
Email: mbraun@foulston.com
*Attorneys for Defendant Richard James*

*/s/ Matthew M. Dwyer, #22492*
Matthew M. Dwyer, #22492